IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| HENRY ANDREE WINZER,<br><br>    Plaintiff,<br><br>v.<br><br>STEPHEN TUDOR et al.,<br><br>    Defendants. | No. 3:15-CV-1469-B-BT |

### **FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
### **OF THE UNITED STATES MAGISTRATE JUDGE**

This *pro se* prisoner civil rights action has been referred to the United States Magistrate Judge for pretrial management pursuant to 28 U.S.C. § 636(b). Before the Court is a Motion for Summary Judgment Based on Qualified Immunity (ECF No. 43), filed by Defendants Stephen Tudor, James Hunter, and Ethan Martin. For the reasons stated, the District Court should GRANT Defendants' Motion.

### **Background**

Plaintiff, a Texas prisoner, is serving a sentence for his conviction of aggravated assault of a public servant. Plaintiff was arrested by the Kaufman County Sheriff in April 2013 and was detained in the Kaufman County Jail until August 2014, when he was released to the custody of the Texas Department of Criminal Justice. By this lawsuit, Plaintiff claims three Kaufman County Jail Officers—Defendants Tudor, Martin, and Hunter—used excessive force against

1

him during two different incidents while he was incarcerated at the Kaufman County Jail.

The first incident allegedly occurred on October 2, 2013, when Plaintiff refused to provide his uniform to the jail officer collecting dirty laundry. Pl.'s Resp. to MSJ 10 (ECF No. 49). Plaintiff contends that after he refused to take off the uniform he was wearing and give it to the officer, a "squad" of other officers entered his cell and ordered him to lie on the floor. *Id.* Plaintiff laid down on his back, but the officers forcibly tried to roll him over on his stomach. Pl.'s Resp. to Magistrate Judge's Third Questionnaire 2 (ECF No. 15). The officers used a taser on Plaintiff, placed him in a restraint chair, and removed him to a segregation cell, where they allegedly stripped him naked and left him overnight without water or food. *Id.*

Plaintiff alleges the second incident occurred after 11:00 p.m. on an unknown date, when a guard asked if he wanted to go to the day room. *Id.* 4. He maintains that he repeatedly told the guard no. *Id.* Plaintiff claims that after he had gone to sleep, a guard opened his cell door, and he saw several guards in the hall along with a command shift officer that he cannot identify. *Id.* The guard allegedly told Plaintiff to get up and go to the dayroom because they needed to remove the trash from his cell and mop it. *Id.* Plaintiff asserts that he had already mopped the cell floor, using a milk carton as a squeegee, and cleaned the toilet by wiping the inside of the bowl with another milk carton. *Id.* Officer Martin allegedly made a critical remark about water that had "seeped under the door," and thought it was there to make him fall. *Id.* Plaintiff asserts that "[his] floor was spotless, and the

day shift guards knew it." *Id.* Plaintiff recounts that the guards were then told to "take him down," and they forced him down the hall "in a double arm lock." *Id.* Plaintiff maintains that he suffered scrapes, bleeding at his mouth, aggravation of his shoulder, and emotional distress because of this incident. *Id.*

Plaintiff contends Defendants' conduct during the "laundry incident" and the "cell-cleaning incident" violated his civil rights under the First, Fourth, Fifth, and Fourteenth Amendments to the U.S. Constitution. Defendants have filed a motion for summary judgment as to all of Plaintiff's claims. Defendants first argue that there is no evidence the cell-cleaning incident ever happened. With respect to the laundry incident, Defendants Tudor and Martin contend they are entitled to summary judgment because there is no evidence either of them was personally involved in the conduct that allegedly violated Plaintiff's constitutional rights. And, Defendant Hunter argues he is entitled to summary judgment based on qualified immunity because his contact with Plaintiff does not constitute excessive force and because Plaintiff did not suffer a cognizable injury. All three Defendants further argue they are entitled to qualified immunity with respect to the laundry incident because they acted objectively reasonably under the circumstances.

The Court gave Plaintiff an opportunity to conduct discovery on the issue of qualified immunity, but Plaintiff did not avail himself of the opportunity. Plaintiff did

file a written response to Defendants' motion,[3] and Defendants filed a reply. The issues are now fully briefed, and the motion is ripe for determination.

## Legal Standards

### Qualified Immunity

"Qualified immunity attaches when an official's conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (per curiam) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam)); *accord Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix*, 136 S. Ct. at 308 (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). "A right may be clearly established without 'a case directly on point,' but 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Hanks v. Rogers*, 853 F.3d 738, 746-47 (5th Cir. 2017) (citing *White*, 137 S. Ct. at 551)). The doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Stanton v. Sims*, 571 U.S. 3, 6 (2013) (per curiam) (quoting *Ashcroft v. al-Kidd*, 563 U.S.

---

[3] Plaintiff's response inappropriately raises new issues not previously raised in his complaint. Accordingly, the Court does not consider those issues now. Pl.'s Resp. to MSJ (ECF No. 49).

731, 743 (2011) (internal quotation marks omitted)); *accord City & Cty. of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1774 (2015).

A court reviews a motion for summary judgment based on qualified immunity in two steps; it must first decide "whether the plaintiff has alleged a violation of a constitutional right." *Charles v. Grief*, 522 F.3d 508, 511 (5th Cir. 2008); *see also Luna v. Mullenix*, 773 F.3d 712, 718 (5th Cir. 2014), *rev'd on other grounds*, 136 S. Ct. 305 (2015) (citing *Tolan v. Cotton*, 134 S. Ct. 1861, 1865 (2014) (per curiam); *Flores v. City of Palacios*, 381 F.3d 391, 395 (5th Cir. 2004)). Second, the court must decide "whether the defendant's actions violated clearly established statutory or constitutional rights of which a reasonable person would have known." *Flores*, 381 F.3d at 395 (citation and internal quotation marks omitted). This requires determining "whether the defendant's conduct was objectively reasonable in light of the clearly established law at the time of the incident." *Charles*, 522 F.3d at 511 (citation and quotation marks omitted). In other words, "whether it would have been clear to a reasonable [official] in the [defendants'] position that their conduct was unlawful in the situation they confronted." *Wood v. Moss*, 134 S. Ct. 2056, 2067 (2014) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (internal quotation marks and brackets omitted)). Though the court may consider either step first, "deciding the two prongs in order 'is often beneficial.'" *Darden v. City of Fort Worth*, 880 F.3d 722, 727 (5th Cir. 2018) (quoting *Pearson*, 555 U.S. at 236).

Once a defendant raises qualified immunity, "the burden is on the plaintiff to demonstrate the inapplicability of the defense." *McClendon v. City of Columbia*,

305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam) (citing *Bazan ex rel. Bazan v. Hidalgo Cty.*, 246 F.3d 481, 489 (5th Cir. 2001)); *see Harris v. Serpas*, 745 F.3d 767, 771 (5th Cir. 2014) ("Once the defendant raises the qualified immunity defense, 'the burden shifts to the plaintiff to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law.'" (quoting *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008))). "Despite this burden-shifting, all reasonable inferences must be drawn in the non-movant plaintiff's favor." *Hyatt v. Thomas*, 843 F.3d 172, 177 (5th Cir. 2016) (citing *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010)). Nevertheless, a plaintiff's burden at summary judgment "'to rebut a claim of qualified immunity once the defendant has properly raised it in good faith' . . . 'is a demanding [one].'" *Mendez v. Poitevent*, 823 F.3d 326, 331 (5th Cir. 2016) (quoting, respectively, *Cole v. Carson*, 802 F.3d 752, 757 (5th Cir. 2015); *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015)).

Qualified immunity is appropriately resolved at the summary judgment stage when (1) a plaintiff has established that the defendant engaged in the conduct at issue, or (2) the court "skip[s], for the moment, over . . . still-contested matters to consider an issue that would moot their effect if proved." *Haverda v. Hays Cty.*, 723 F.3d 586, 599 (5th Cir. 2013) (brackets and ellipses in original) (internal quotation marks omitted) (citing *Harlow*, 457 U.S. at 818). If resolution of qualified immunity at the summary judgment stage involves a fact question as to what the defendant did, rather than whether the defendant is immune for what he

did, then "the case is inappropriate for summary judgment on the basis that the defendant did not engage in conduct violative of the plaintiff's rights." *Barker v. Norman*, 651 F.2d 1107, 1124 (5th Cir. Unit A July 1981). However, a defendant can pretermit the question of whether he engaged in the offending conduct to present the qualified immunity issue because "[t]here is no point in going to trial to determine whether the officer engaged in the complained-of conduct if the officer would be immunized from liability even if he did engage in that conduct." *Id.* at 1124. Even so, where a defendant establishes beyond dispute that he did not engage in the offending conduct, then summary judgment may still be appropriate. *Id.* But "[a] summary judgment on [those] grounds . . . has nothing to do with the qualified immunity defense; rather, it is based on the plaintiff's inability to prove the facts essential to recovery . . . ." *Id.* (citation omitted). Similarly, when the offending conduct, even if it did occur, does not amount to a violation of the plaintiff's constitutional rights, then summary judgment may be proper, though "[that] summary judgment would not be based on qualified immunity grounds, but instead on the lack of a legally sufficient predicate for section 1983 . . . ." *Id.*

When a plaintiff cannot prove the necessary facts essential to recovery, summary judgment is proper. Fed. R. Civ. P. 56. Ordinary summary judgment under the Federal Rules is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is also appropriate when "the nonmoving party has failed to make a sufficient showing on an essential element of her case with

7

respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine issue of material fact exists when a trier of fact could resolve the dispute in favor of either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

## Analysis

### I. The Cell-cleaning Incident

The Court initially observes that Plaintiff appears to have abandoned his claims arising out of any alleged cell-cleaning incident. Defendants moved for summary judgment claiming there is no evidence the incident occurred. The jail has no record of any such event. In response, Plaintiff failed to come forward with any evidence the incident did occur. He did not make any argument in response to Defendants' claim and failed to even address the incident in his summary judgment response. When a plaintiff files a response to a summary judgment motion, but fails to address a claim, he is deemed to have abandoned it. *See Essinger v. Liberty Mut. Fire Ins. Co.*, 529 F.3d 264, 270-71 (5th Cir. 2008) (citing *MacArthur v. Univ. of Tex. Health Ctr.*, 45 F.3d 890, 895-96 (5th Cir. 1995)); *Fehlhaber v. Fehlhaber*, 702 F.2d 81, 83-84 (5th Cir. 1983); *Penrod v. Bank of N.Y. Mellon*, 824 F. Supp. 2d 754, 763 (S.D. Tex. 2011) (Atlas, J.).

Even if Plaintiff did not abandon his claims with respect to the cell-cleaning incident, Defendants Tudor, Martin, and Hunter would still be entitled to summary judgment because no evidence exists that the incident occurred. Further, Plaintiff does not allege that Defendants Tudor, Martin, or Hunter were personally

8

involved in the alleged incident; in fact, Plaintiff does not name any specific party who engaged in the use of force during the alleged cell-cleaning incident. Summary judgment is proper when the nonmovant fails to make a sufficient showing to establish the existence of an essential element of his case, which he bears the burden of proving at trial. *Celotex*, 477 U.S. at 322-23. Because Plaintiff offers no evidence that any Defendant engaged in the use of force during the cell-cleaning incident, Defendants Tudor, Martin, and Hunter are entitled to summary judgment with respect those claims.

## II. The Laundry Incident

### A.

The uncontroverted summary judgment evidence shows the laundry incident occurred on October 2, 2013. Pl.'s Resp. to MSJ 10; Defs.' App. 74 (ECF No. 45). Officer Martin was conducting the jail's weekly laundry exchange, when he arrived at Plaintiff's cell and asked him to get up and exchange his laundry. *Id.* Plaintiff was lying down with a blanket covering his face and did not respond. *Id.* Martin then knocked on the door, and Plaintiff moved his foot but did not respond verbally. Pl.'s Resp. to MSJ 12; Defs.' App. 76. Martin completed the rest of the laundry exchange, and then asked Sergeant Shaw for assistance with Plaintiff. *Id.* Although Martin and Shaw repeated their request for Plaintiff's laundry, he ignored them until Shaw entered the cell and "tugged at the blanket" covering Plaintiff's head. Pl.'s Resp. to MSJ 10; Defs.' App. 74. When Shaw asked him to get up so that they could exchange his laundry, Plaintiff responded, "Make me. Put

9

your hands on me." *Id.* No physical contact occurred during this interaction. Pl.'s Resp. to MSJ 12-13; Defs.' App. 76-77.

Shaw then asked his supervisor, Lieutenant Kirby, for guidance. Pl.'s Resp. to MSJ 11; Defs.' App. 75. Kirby inquired of Captain Compton whether exchanging Plaintiff's laundry was necessary to avoid confrontation. *Id.* Compton confirmed that the laundry exchange was necessary to comply with Texas jail standards, so Kirby, Shaw, and Martin returned to Plaintiff's cell with Officers Dickey and Corder. Pl.'s Resp. to MSJ 10-11; Defs.' App. 74-75. Plaintiff again refused to exchange his laundry and said, "[p]ut Martin on this side of the door with me." Pl.'s Resp. to MSJ 13; Defs.' App. 77. Seeing that he was angry with Martin, Shaw told Martin to have Officer Hunter replace him. *Id.* Kirby then told Plaintiff that if he would not comply, they would have to use force to exchange his laundry. Pl.'s Resp. to MSJ 10; Defs.' App. 74. Plaintiff responded that using force would be necessary. Pl.'s Resp. to MSJ 12; Defs.' App. 76.

Kirby then ordered that the door be opened, and Officers Dickey, Hunter, and Shaw entered the cell. Pl.'s Resp. to MSJ 11; Defs.' App. 75. They told Plaintiff to get on his knees and face the rear wall, warning him that if he resisted, he would be tased. Pl.'s Resp. to MSJ 10-11; Defs.' App. 74-75. Plaintiff sat on the ground and faced the officers. Pl.'s Resp. to MSJ 11; Defs.' App. 75. They then ordered him to lie on his stomach. *Id.* Plaintiff refused, so Officers Hunter and Dickey grabbed Plaintiff's upper arms to turn him over. *Id.* Plaintiff continued to resist. *Id.* Shaw warned him one last time, saying "stop resisting," and when Plaintiff did not stop,

10

he "drive stunned" Plaintiff's upper thigh.[4] *Id.* The officers handcuffed Plaintiff, placed him in a restraint chair, and wheeled him to "Violent 2," a cell in another area of the jail. *Id.*

When Officers Martin and Hunter traded places, Martin took over duty in the area where "Violent 2" was located. Pl.'s Resp. to MSJ 13; Defs.' App. 77. Plaintiff noticed Martin upon arrival at "Violent 2" and said, "Remember what I told you Martin, I'll see you and I'll kill you." *Id.* Martin did not respond. *Id.* While in "Violent 2," Plaintiff had the choice to remain in the restraint chair or to be freed from it. Pl.'s Resp. to MSJ 10; Defs.' App. 74 He chose to stay in the chair, so his hands were uncuffed and placed in the chair's restraints instead. *Id.* Officers placed blue mattresses around the chair in case Plaintiff tried to tip it over. *Id.* Plaintiff was told that he would stay in "Violent 2" for two hours and then be released back to his cell if there were no further incidents. Pl.'s Resp. to MSJ 11; Defs.' App. 75. There is no evidence of any other incident or that Plaintiff was not timely returned to his cell.

B.

In view of all the evidence, Defendants Tudor and Martin are entitled to summary judgment. There is no genuine issue of material fact that either officer violated Plaintiff's rights because it is undisputed that neither officer had any

---

[4] "Drive stunning" involves removing the cartridge from the taser and applying the taser directly to a subject's body. Def. Br. 6 n.2. The technique causes pain but avoids penetrating the subject's skin with the barbs of the taser. *Id.*

11

physical contact with him. When no reasonable juror could find for the nonmovant based on the summary-judgment evidence, no genuine issue of material fact exists. *Rutherford v. Muniz*, 280 F. App'x 337, 338 (5th Cir. 2008) (per curiam). In this case, no reasonable juror could find for Plaintiff. According to the Jail Incident Report, Officer Tudor was not one of the officers present when they used physical force to exchange Plaintiff's laundry. Pl.'s Resp. to MSJ 10; Defs.' App. 74. Plaintiff offers no argument—much less evidence—to the contrary. Because there is no fact issue as to whether Officer Tudor was present during the laundry incident, summary judgment is proper as to any claims against him flowing from that incident.

Similarly, the Jail Incident Report indicates that Officer Martin also was not present when officers used force to remove Plaintiff from his cell during the laundry exchange because he switched jobs with Officer Hunter to avoid further angering Plaintiff. Pl.'s Resp. to MSJ 13; Defs.' App. 77. In Lieutenant Kirby's supplement to the Jail Incident Report, she states that Officers Dickey, Hunter, and Sergeant Shaw entered the cell to force Plaintiff to comply with their orders. Pl.'s Resp. to MSJ 11; Defs.' App. 75 Kirby's list of officers entering the cell to forcibly exchange Plaintiff's laundry does not include Officer Martin, and Plaintiff does not contradict this evidence. As a result, no fact issue exists regarding Officer Martin's use of force during the laundry incident, and he is also entitled to summary judgment with respect to claims against him flowing from that incident.

C.

Officer Hunter is entitled to summary judgment based on qualified immunity with respect to his conduct during the laundry incident because his contact with Plaintiff was objectively reasonable in light of clearly established law. Hunter's conduct did not constitute excessive force under either the Eighth or Fourteenth Amendments. An excessive force claim arises under either the Eighth or Fourteenth Amendment depending on whether an individual was a pretrial detainee or a convicted prisoner at the time of the alleged events. *Tilley v. Gonzalez*, 2010 WL 4722216, at *3 (N.D. Tex. Oct. 27, 2010), *report and recommendation adopted*, 2010 WL 4722469 (N.D. Tex. Nov. 22, 2010) (citing *Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996) (en banc)). However, "the standards are the same under both amendments." *Id.* (citing *Valencia v. Wiggins*, 981 F.2d 1440, 1446 (5th Cir. 1993); *Tilley v. Gonzalez*, 2010 WL 1541494, at *4 n. 3 (N.D. Tex. Mar. 10, 2010), *report and recommendation adopted*, 2010 WL 1542181 (N.D. Tex. Apr. 15, 2010)).

"To succeed on an excessive force claim, a plaintiff bears the burden of showing (1) an injury (2) which resulted directly and only from the use of force that was excessive to the need and (3) the force used was objectively unreasonable." *Lincoln v. Turner*, 874 F.3d 833, 846 (5th Cir. 2017) (citation and quotation marks omitted). To determine whether force used was excessive, the "'core judicial inquiry'" is "'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Tilley*, 2010 WL

4722216, at *4 (citing *Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *Wilkins v. Gaddy*, 559 U.S. 34, 37, (2010) (per curiam)). "This inquiry has two components—an objective one that focuses on whether the alleged wrongdoing was harmful enough to violate the Constitution and a subjective one that focuses on the mental state of the alleged wrongdoer." *Id.* (citing *Hudson*, 503 U.S. at 8). "An inmate who complains of a push or shove that causes no discernible injury almost certainly fails to state a valid excessive force claim." *Wilkins*, 559 U.S. at 38 (internal citation and quotation marks omitted). Where a discernible injury does exist, it need not be "significant," but must be more than *de minimis*. *Jackson v. Culbertson*, 984 F.2d 699, 700 (5th Cir. 1993) (per curiam); *see also Hudson*, 503 U.S. at 9-10 (1992) ("The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" (quoting *Whitley v. Albers*, 475 U.S., 312, 327 (1986))). "The degree of injury necessary to meet this requirement is related to the amount of force that was constitutionally permissible under the facts of the case." *Aguilar v. Robertson*, 512 F. App'x 444, 449 (5th Cir. 2013) (per curiam) (citing *Williams v. Bramer*, 180 F.3d 699, 703-04 (5th Cir. 1999)). Facts such as whether a plaintiff resisted may indicate that the use of force was excessive. *See Lincoln*, 874 F.3d at 847. However, certain injuries will always be *de minimis*, such as being handcuffed too tightly without more; psychological injuries, though, may rise above that level. *Lincoln*, 874 F.3d at 846 (citing *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001);

*Dunn v. Denk*, 79 F.3d 401, 402 (5th Cir. 1996) (en banc) (discussing injury in the Fourth Amendment context)).

Officer Hunter's use of force was not excessive and applied in a good-faith effort to maintain discipline. The uncontroverted evidence establishes that Plaintiff repeatedly refused to comply with the jail officers' commands to exchange his laundry—even after Defendants told him they would use force to gain his compliance. Plaintiff also threatened Martin, "[p]ut Martin on this side of the door with me," and dared Defendants to "[p]ut your hands on me." When officers, including Officer Hunter, entered Plaintiff's cell and ordered him to lie face down, Plaintiff refused to comply and remained seated. Only then did Officer Hunter grab Plaintiff's arm to move him to a prone position. Pl.'s Resp. to MSJ 10-11; Defs.' App. 74-75. When Plaintiff continued to resist, Sergeant Shaw drive stunned him. Based on his experience and training, Officer Hunter believed his taking hold of Plaintiff's arm to turn him over was necessary in light of Plaintiff's continued defiance. Defs.' App 8. There is no evidence that Officer Hunter acted maliciously or sadistically. There also is no evidence that Plaintiff suffered any injury resulting from Officer Hunter's conduct. Accordingly, Officer Hunter is entitled to summary judgment based on qualified immunity with respect to all claims arising from the laundry incident because his contact with Plaintiff does not constitute excessive force, and Plaintiff suffered no cognizable injury.

## **RECOMMENDATION**

For the reasons stated, the District Court should GRANT Defendants' Motion for Summary Judgment (ECF No. 43) and DISMISS WITH PREJUDICE Plaintiff Henry Andree Winzer's claims against Defendants Stephen Tudor, James Hunter, and Ethan Martin.

**SO RECOMMENDED**.

December 12, 2018.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

## **INSTRUCTIONS FOR SERVICE AND**
## **NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).